UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Big Red Box, LLC,<br><br>                          Plaintiff<br><br>vs.<br><br>Square, Inc., American Express Company, William Tye Grisel, Joe Grisel, G5 Marketing Solutions, LLC, and John Doe Bank,<br><br>                          Defendants | Civil Action No.    3:18-758-TLW<br><br>**COMPLAINT**<br><br>(Jury Trial Requested) |

Plaintiff, complaining of the Defendants above-named, would show this Court:

**JURISDICTION**

1. The State of Residence of Plaintiff is in Columbia, South Carolina.

2. The Defendant Square, Inc. is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of California.

3. The Defendant American Express Company is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of New York.

4. The Defendant William Tye Grisel is an individual who resides in Columbia, South Carolina.

5. The Defendant Joe Grisel is an individual who resides in Grapevine, Texas.

6. The Defendant G5 Marketing Solutions, LLC is a limited liability company with its headquarters, membership and nerve center in Colleyville, Texas.

7. The Defendant John Doe Bank is a foreign corporation with its principal place of business, "nerve center" and headquarters in a location to be determined.

8. As described below, Plaintiff suffered significant financial losses, and other concrete injuries due to the conduct of Defendants herein.

9. This Court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. §§ 1331 and 1337.

## FACTUAL ALLEGATIONS

10. Plaintiff owns and operates a business that rents dumpsters locally, brokers the rental of dumpsters nationwide, and employs dozens of people in Columbia, South Carolina.

11. In or around 2012, Plaintiff hired Defendant William Tye Grisel ("Tye Grisel") to work in its Marketing and IT Department(s).

12. Unbeknownst to Plaintiff, in or around 2014 Defendant Tye Grisel created a fictitious business he called "Local List Construction."

13. Thereafter, Defendant Tye Grisel embarked upon a scheme, with the knowing, negligent and/or reckless complicity of the Defendants described below, to defraud Plaintiff of at least $1,049,996.97 on "invoices" issued by the fictitious Local List company.

## Aid of Square, Joe Grisel, and John Doe Bank in Scheme

14. Defendant Square advertises its ability to turn any computer into a "Payment Terminal," promising that a user can "type in any card number into [a] computer and have the fund deposited into [an] account the next day."

15. Unlike a bank, Defendant Square does not require a purported "business" to provide EIN numbers, articles of incorporation, or other "Know Your Customer" indicia long required of banks, to combat money laundering, fraud, and terrorism.

16. Because of these and other security flaws, Square makes it easy for individuals to process and receive immediate gain from fraudulent transactions, unauthorized credit card transactions, and stolen credit card numbers.

17. As a direct and proximate result, Square is routinely complicit in the execution of various fraudulent transactions.

18. Square expressly knows of the above risks (having acknowledged being hit with $5.7 million dollars in fraud from a single seller in a few months). As Square itself concedes, the "*highly automated nature of, and liquidity offered by our payments, make [Square] a target for illegal or improper uses, including fraudulent or illegal sales of goods or services, money laundering, and terrorist financing.*"

19. In or around June of 2014, without Plaintiff's knowledge or consent, Defendant Tye Grisel opened an account with Defendant Square, Inc., ("Square") on behalf of his fictitious "Local List Construction" business.

20. The "business address" for Local List Construction provided to Defendant Square (and, upon information and belief, John Doe Bank) was not a business address but Tye Grisel's father Joe Grisel's residential address in Texas.

21. The Square account was then linked to an account opened and controlled by Defendant Tye Grisel and/or Defendant Joe Grisel, his father, at Defendant John Doe Bank.

22. The sole purpose of the Square account was to allow the processing of fraudulent credit card payments made to Grisels' fake business, and deposit of those payments into the Grisel account at Defendant John Doe Bank "the very next day."

23. Upon information and belief, with the knowledge and complicity of Defendant Joe Grisel in or around June of 2014, without Plaintiff's knowledge, Defendant Tye Grisel created invoices for Local List Construction, telling Plaintiff that Local List was a third-party provider of SEO services and business leads.

24. Local List provided no services, had no employees, and was entirely fictional.

25. Beginning in June of 2014, Defendant Tye Grisel used Plaintiff's Bank of America credit card number or numbers to processed payments through Defendant Square and into John Doe Bank.

26. Defendant Square processed each fraudulent payment and transferred funds to the account at Defendant John Doe Bank controlled by one or both Grisels.

27. Over the next year, Defendant Tye Grisel used Square and John Doe accounts to process at least $138,751.50 in fraudulent payments from Bank of America credit cards, all of which were converted to his own personal use.

## Continuation of Scheme with AMEX

28. In March of 2015, Defendant Tye Grisel left Plaintiff, ostensibly to start a company known as "G5 Marketing Solutions, LLC."

29. Defendant G5 Marketing Solutions, LLC was, upon information and belief, formed as a limited liability in February of 2016.

30. Tye Grisel continued, individually and through G5, in an "independent consulting" relationship with Plaintiff to provide marketing advice through a company called G5; Grisel continued the use of the fictitious Local List scheme, creating dummy invoices for Local List and processing funds – through Square – into the John Doe Account.

31. Prior to 2015, Defendant American Express ("AMEX") issued two credit cards to Plaintiff: a Business Platinum card, and an AMEX Gold card.

32. At the time of issue, Defendant AMEX represented to Plaintiff it had a "zero fraud liability" policy meaning that Plaintiff would not be liable for payment of fraudulent transactions.

33. After moving to G5, Tye Grisel obtained the account numbers for the above AMEX cards.

34. From June of 2015 through June of 2016, Tye Grisel used the Business Platinum card to process payments through Square to the John Doe account; from July of 2016 through April of 2017 (at which time the scheme was uncovered) Tye Grisel used the AMEX Gold card.

35. During the above time periods, Defendant Tye Grisel used Defendant Square to process over $898,000.

36. In early April of 2017, Defendant Tye Grisel's fraudulent scheme was uncovered, and criminal charges were initiated against him.

37. Upon discovering the fraud, Plaintiff immediately reported same to Defendant AMEX in writing.

38. Defendant AMEX promised, consistent with its obligation to fully investigate.

39. Initially, AMEX credited Plaintiff's accounts for over $550,000 which, clearly, represented fraudulent funds.  n or about April 11, 2017, Defendant AMEX credited Plaintiff's $97,457 However, on or about May 8, 2017 reversed all prior credits and purported to close its investigation because Plaintiff "released the account number to the "Merchant."

40. Defendant AMEX ignored the fact that the "Merchant" Local List, did not actually exist, was a complete fiction, and provided no services to Plaintiff.

41. To the extent that Local List was a "Merchant," AMEX ignored its obligations to investigate or process the dispute as a merchant dispute based on the non-receipt of services from the "Merchant."

42. Defendant AMEX found no fraud, treated the matter as a garden variety billing rather than the fraud dispute it was and – if the dispute could be one over non-receipt of services – simply ignored that fact.

### Damage to Plaintiff as a Result of Defendants' Wrongful Acts

43. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered out of pocket losses in the total amount of $1,049,996.97 from Plaintiff.  Defendants are jointly and severally liable for the losses and such other damages, costs, attorney's fees, interest thereon, and other relief as awarded at trial, as follows:

    a. As a direct and proximate result of the actions or inaction of Defendants Tye Grisel, Joe Grisel, John Doe Bank, G5 Marketing Solutions and Square, Plaintiff suffered fraud losses exceeding $1,049,996.97._

    b. As a direct and proximate result of the actions or inaction of Defendant AMEX, of the above sum, Plaintiff suffered losses totaling Plaintiff suffered fraud losses exceeding $898,000.

44. As a direct and proximate result of Defendants negligent, reckless, willful, intentional, and unlawful conduct, its violations of the Plaintiff's rights under state and federal law Plaintiff has been damaged in an amount to be determined by the trier of fact.

45. The harms caused by Defendants is likely to be redressed by a favorable judicial decision, and through both injunctive relief, an award of damages, and assessment of fines and punitive damages.

## FIRST CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, JOHN DOE BANK, G5 MARKETING SOLUTIONS, LLC, & JOE GRISEL

### (Aiding and Abetting)

46. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

47. Plaintiff would show that Defendant Tye Grisel owed Plaintiff a fiduciary duty and was consequently bound to act with good faith and due regard to the interest of the Plaintiff.

48. As set forth hereinabove, while employed by Plaintiff, Defendant Tye Grisel breached his duties to the Plaintiff by way of the fraudulent schemes described hereinabove.

49. Defendant Tye Grisel's scheme involved direct or obvious fraudulent charges, for his direct and obvious benefit, in clear breach of his fiduciary duties to the Plaintiff.

50. Defendants Square, John Doe Bank, G5, and Joe Grisel knowingly or recklessly participated in these transactions, and directly aided and enabled Tye Grisel to breach his fiduciary duty to the Plaintiff.

51. As a direct and proximate result of Defendants' assistance, by reckless or intentional means to be shown at trial, Plaintiff has been damaged in an amount to be determined by the trier of fact.

## SECOND CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, JOHN DOE BANK, G5 SOLUTIONS, LLC, TYE GRISEL & JOE GRISEL

### (Conversion)

52. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

53. The actions of Defendants constitute conversion of the money or property of Plaintiff.

54. Because of the unlawful conversion of property by Defendant, injuries have been inflicted upon Plaintiff that may be recovered by way of judgment against Defendants for a sum over the value of all sums converted, plus interest, other consequential damages, punitive damages, costs and attorney's fees.

## FOR A THIRD CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, G5 SOLUTIONS, LLC, JOHN DOE BANK, & AMEX

### (Negligence)

55. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

56. Defendants owed Plaintiffs a duty to exercise due care which arises by statute, regulation, and the common law.

57. Defendants breached their duties to Plaintiff in the above, and in such other as shown at trial.

58. The breach of duty by Defendants was in conscious, reckless disregard of the rights of Plaintiff.

59. As a direct and proximate result of the negligent, careless, reckless, willful and wanton acts and omissions of the Defendants, judgment should be granted to the Plaintiff for both actual and punitive damages.

## FOR A FOURTH CAUSE OF ACTION AS TO DEFENDANTS TYE GRISEL, JOE GRISEL, SQUARE, G5 MARKETING SOLUTIONS & JOHN DOE BANK

### (Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO")

### 18 U.S.C. §1961 et. seq)

60. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

61. Defendants entered, employed and/or associated with and controlled an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c).

62. Defendants participated in the conduct of affairs of this enterprise, through a pattern of racketeering activity, which activity including mail fraud, wire fraud, and theft of funds.

63. To the extent certain Defendants did not participate directly in such acts, they knowingly and willfully aided and abetted them.

64. Defendants made interstate wire, signals and sound communications, including wireless telephone communications, in furtherance of the scheme in violation of 18 U.S.C 1343.

65. Each of the above violations by the Defendants is a separate predicate act under RICO and was part of a common and continuous pattern of fraudulent acts and schemes with the same unlawful purpose, constituting a "pattern of racketeering activity" within the meaning of RICO.

66. Defendants' actions as alleged violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1961 et. seq

67. Defendants' acts have directly and proximately caused Plaintiff to suffer harm, including loss of money and property, for which Plaintiff is entitled to judgment.

## FOR A FIFTH CAUSE OF ACTION AS TO DEFENDANTS TYE GRISEL, JOE GRISEL, SQUARE, G5 MARKETING SOLUTIONS, LLC & JOHN DOE BANK

### (Civil Conspiracy)

68. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

69. Defendants entered a plan, conspiracy or scheme, and combined to misappropriate Plaintiff's funds using unlawful means.
70. Defendants joined to injure the Plaintiff.
71. As a proximate consequence of the wrongful acts of the Defendants, injury was inflicted upon Plaintiff.
72. Upon information and belief, judgment should be granted to Plaintiff for compensatory and punitive damages that a jury deems reasonable, plus costs.
73. Because of the foregoing, Plaintiff is entitled to a judgment for actual damages as may proven besides special and general damages.
74. The recklessness and malicious conduct of Defendants further entitles Plaintiff to punitive damages in an amount to be determined by the trier of fact.

## FOR A SIXTH CAUSE OF ACTION AS TO DEFENDANTS SQUARE, G5 MARKETING SOLUTIONS, LLC, AMEX & JOHN DOE BANK
### (Violation of SC Code §39-5-10)

75. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.
76. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.
77. The activities of the Defendants constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).
78. The actions of the Defendants, above-described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.
79. The actions of the Defendants have a real and substantial potential for repetition and affect the public interest.

80. The Plaintiff has suffered an ascertainable loss due to the unlawful actions of the Defendants entitling Plaintiff to recover actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs

## PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiff is for judgment in an amount sufficient to compensate Plaintiff for actual damages, with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

DAVE MAXFIELD, ATTORNEY, LLC

By:   s/ Dave Maxfield_____
David A. Maxfield, Esq., Fed ID 6293
5217 N. Trenholm Road, Suite B
Columbia, SC 29206
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com

March 19, 2018

## **ELECTRONICALLY STORED INFORMATION REQUEST**

This notice demands that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all correspondence, including electronic correspondence and records and recordings of any telephone communication between your company and any other party herein.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery in this matter may be stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter, "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must take reasonable steps to secure their compliance.