UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Big Red Box, LLC,<br><br>Plaintiff<br><br><br>vs.<br><br><br>Square, Inc., American Express Company, William Tye Grisel, Joe Grisel, G5 Marketing Solutions, LLC, and John Doe Bank,<br><br>Defendants | Civil Action No.   3:18-cv-00758-DCC<br><br><br>**FIRST AMENDED COMPLAINT**<br><br>(Jury Trial Requested) |

Plaintiff, complaining of the Defendants above-named, would show this Court:

### **JURISDICTION**

1. The State of Residence of Plaintiff is the State of South Carolina.

2. The Defendant Square, Inc. is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of California.

3. The Defendant American Express Company is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of New York.

4. The Defendant William Tye Grisel is an individual who resides in Columbia, South Carolina.

5. The Defendant Joe Grisel is an individual who resides in Grapevine, Texas.

6. The Defendant G5 Marketing Solutions, LLC is a limited liability company with its headquarters, membership and nerve center in Colleyville, Texas.

7. The Defendant John Doe Bank is a foreign corporation with its principal place of business, "nerve center" and headquarters in a location to be determined.

8. As described below, Plaintiff suffered significant financial losses, and other concrete injuries due to the conduct of Defendants herein.

9. This Court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. §§ 1331 and 1337.

## FACTUAL ALLEGATIONS

10. Plaintiff owns and operates a business that rents dumpsters locally, brokers the rental of dumpsters nationwide, and employs dozens of people in Columbia, South Carolina.

11. In or around 2012, Plaintiff hired Defendant William Tye Grisel ("Tye Grisel") to work in its Marketing and IT Department(s).

12. Unbeknownst to Plaintiff, in or around 2014 Defendant Tye Grisel created a fictitious business he called "Local List Construction."

13. Thereafter, Defendant Tye Grisel embarked upon a scheme, with the knowing, negligent and/or reckless complicity of the Defendants described below, to defraud Plaintiff of at least $1,049,996.97 on "invoices" issued by the fictitious Local List company, via charging Plaintiff's AMEX cards through Square.

### Aid of Square, Joe Grisel, and John Doe Bank in Scheme

14. Defendant Square advertises its ability to turn any computer into a "Payment Terminal," promising that a user can "type in any card number into [a] computer and have the fund deposited into [an] account the next day."

15. Defendant Square provides users with equipment, including card readers and software, for this purpose and, upon information and belief, provided same to Defendant Tye Grisel, G5, and/or Tye Grisel's fictitious business.

16. Square earns money by taking a cut of each transaction (2.75% per swipe or 3.75% plus 15 cents for manually typed transactions).

17. Defendant Square knows that its products can be and are used "*for illegal or improper uses, including fraudulent or illegal sales of goods or services, money laundering, and terrorist financing.*"

18. Defendant Square knows or should know of the need to establish and follow robust underwriting and screening processes, and establish procedures for ongoing monitoring of, and responding to, red flags on merchant accounts, yet does not.

19. Despite the foregoing risks, the application for a Square Account – even for an entity holding itself out as a corporation or business, is ridiculously brief, essentially requiring only an email a password, and acceptance of Square's terms.

20. Upon information and belief, beyond requiring acceptance of the term of use that a Square user will not use the service to commit fraud, Square takes no actions to monitor or ensure that same is not occurring.

21. Unlike a bank, Defendant Square does not even require a purported "business" – like Grisel's - to provide EIN numbers, articles of incorporation, or other "Know Your Customer" indicia long required of banks, to combat money laundering, fraud, and terrorism.  Likewise, Square does not:

    a.   Obtain any description of  the prospective new user's business, or the nature of goods or services sold;

    b.   Obtain a list of persons involved in the business, or fictitious or trade names;

    c.   Obtain a physical address at which the user has conducted business for any length of time;

    d.   Obtain a list of banks and/or payment processor used by the new user previously, or chargeback rates associated with the business;

    e.   Request even one trade or bank reference;

    f.   Determine whether the prospective user has been placed previously in a payment card association's chargeback monitoring program;

g.  Inquire whether the prospective user is the subject of any legal or criminal actions;

h.  Monitor the activity of a user, once accepted for "red flags" for fraud;

i.  Make or assist in investigations when complaints of fraud are made.

22. Because of these and other security flaws, Square makes it easy for individuals to process and receive immediate gain from fraudulent transactions, unauthorized credit card transactions, and stolen credit card numbers.

23. Square itself profits from such transactions by its complicity and/or laxity through its transaction fees and, as discussed below, made (and retains to this day) transaction fees of between $28,874 and $41,000 from fraudulent transactions made by Grisel.

24. As a direct and proximate result, Square is routinely complicit in the execution of various fraudulent transactions.

25. In or around June of 2014, without Plaintiff's knowledge or consent, Defendant Tye Grisel opened an account with Defendant Square, Inc., ("Square") on behalf of his fictitious "Local List Construction" business.

26. The "business address" for Local List Construction provided to Defendant Square (and, upon information and belief, John Doe Bank) was not a business address but Tye Grisel's father Joe Grisel's residential address in Texas.

27. The Square account was then linked to an account opened and controlled by Defendant Tye Grisel and/or Defendant Joe Grisel, his father, at Defendant John Doe Bank.

28. The sole purpose of the Square account was to allow the processing of fraudulent credit card payments made to Grisels' fake business, and deposit of those payments into the Grisel account at Defendant John Doe Bank "the very next day."

29. Upon information and belief, with the knowledge and complicity of Defendant Joe Grisel in or around June of 2014, without Plaintiff's knowledge, Defendant Tye Grisel created invoices for Local List Construction, telling Plaintiff that Local List was a third-party provider of SEO services and business leads.

30. Local List provided no services, had no employees, and was entirely fictional.

31. Beginning in June of 2014, Defendant Tye Grisel used Plaintiff's Bank of America credit card number or numbers to processed payments through Defendant Square and into John Doe Bank.

32. Defendant Square processed each fraudulent payment and transferred funds to the account at Defendant John Doe Bank controlled by one or both Grisels.

33. Over the next year, Defendant Tye Grisel used Square and John Doe accounts to process at least $138,751.50 in fraudulent payments from Bank of America credit cards, all of which were converted to his own personal use.

## Continuation of Scheme with AMEX

34. In March of 2015, Defendant Tye Grisel left Plaintiff, ostensibly to start a company known as "G5 Marketing Solutions, LLC."

35. Defendant G5 Marketing Solutions, LLC was, upon information and belief, formed as a limited liability in February of 2016.

36. Tye Grisel continued, individually and through G5, in an "independent consulting" relationship with Plaintiff to provide marketing advice through a company called G5; Grisel continued the use of the fictitious Local List scheme, creating dummy invoices for Local List and processing funds – through Square – into the John Doe Account.

37. Prior to 2015, Defendant American Express ("AMEX") issued two credit cards to Plaintiff: a Business Platinum card, and an AMEX Gold card.

38. At the time of issue, Defendant AMEX represented to Plaintiff it had a "zero fraud liability" policy meaning that Plaintiff would not be liable for payment of fraudulent transactions.

39. After moving to G5, Tye Grisel obtained the account numbers for the above AMEX cards.

40. From June of 2015 through June of 2016, Tye Grisel used the Business Platinum card to process payments through Square to the John Doe account; from July of 2016 through April of 2017 (at which time the scheme was uncovered) Tye Grisel used the AMEX Gold card.

41. During the above time periods, Defendant Tye Grisel used Defendant Square to process over $898,000.

42. In early April of 2017, Defendant Tye Grisel's fraudulent scheme was uncovered, and criminal charges were initiated against him.

43. Upon discovering the fraud, Plaintiff immediately reported same to Defendant AMEX in writing.

44. Defendant AMEX promised, consistent with its obligation to fully investigate.

45. Initially, AMEX credited Plaintiff's accounts for over $550,000 which, clearly, represented fraudulent funds. n or about April 11, 2017, Defendant AMEX credited Plaintiff's $97,457 However, on or about May 8, 2017 reversed all prior credits and purported to close its investigation because Plaintiff "released the account number to the "Merchant."

46. Defendant AMEX ignored the fact that the "Merchant" Local List, did not actually exist, was a complete fiction, and provided no services to Plaintiff.

47. To the extent that Local List was a "Merchant," AMEX ignored its obligations to investigate or process the dispute as a merchant dispute based on the non-receipt of services from the "Merchant."

48. Defendant AMEX found no fraud, treated the matter as a garden variety billing rather than the fraud dispute it was and – if the dispute could be one over non-receipt of services – simply ignored that fact.

**<u>Damage to Plaintiff as a Result of Defendants' Wrongful Acts</u>**

49. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered out of pocket losses in the total amount of $1,049,996.97 from Plaintiff. Defendants are jointly and severally liable for the losses and such other damages, costs, attorney's fees, interest thereon, and other relief as awarded at trial, as follows:

   a. As a direct and proximate result of the actions or inaction of Defendants Tye Grisel, Joe Grisel, John Doe Bank, G5 Marketing Solutions and Square, Plaintiff suffered fraud losses exceeding $1,049,996.97._

   b. As a direct and proximate result of the actions or inaction of Defendant AMEX, of the above sum, Plaintiff suffered losses totaling Plaintiff suffered fraud losses exceeding $898,000.

50. Defendant Square earned, by its participating in this scheme, transaction fees between $28,874 and $41,000 from fraudulent transactions made by Grisel for which it is liable along with such other sums stolen.

51. As a direct and proximate result of Defendants negligent, reckless, willful, intentional, and unlawful conduct, its violations of the Plaintiff's rights under state and federal law Plaintiff has been damaged in an amount to be determined by the trier of fact.

52. The harms caused by Defendants is likely to be redressed by a favorable judicial decision, and through both injunctive relief, an award of damages, and assessment of fines and punitive damages.


## FIRST CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, JOHN DOE BANK,
## G5 MARKETING SOLUTIONS, LLC, &  JOE GRISEL

### (Aiding and Abetting)

53. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

54. Plaintiff would show that Defendant Tye Grisel owed Plaintiff a fiduciary duty and was consequently bound to act with good faith and due regard to the interest of the Plaintiff.

55. Defendant Square – who was provided applicant information by Tye Grisel, had access to and processed transactions made at a time when it knew or should have known that Grisel was employed by Defendant, and communicated with him electronically or otherwise (including to e-mail addresses at Plaintiff's domain) knew or should have known of his fiduciary duty.

56. As set forth hereinabove, while employed by Plaintiff, Defendant Tye Grisel breached his duties to the Plaintiff by way of the fraudulent schemes described hereinabove.

57. Defendant Square not only knew of the breach but participated in each fraudulent transaction herein – and expressly profited from such transactions – in an amount between $28,874 and $41,000.

58. Defendant Tye Grisel's scheme involved direct or obvious fraudulent charges, for his direct and obvious benefit, in clear breach of his fiduciary duties to the Plaintiff.

59. Defendants Square, John Doe Bank, G5, and Joe Grisel knowingly or recklessly participated in these transactions, and directly aided and enabled Tye Grisel to breach his fiduciary duty to the Plaintiff.

60. Defendant Square knowingly participated in

61. As a direct and proximate result of Defendants' assistance, by reckless or intentional means to be shown at trial, Plaintiff has been damaged in an amount to be determined by the trier of fact.

## FOR A SECOND CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, JOHN DOE BANK, G5 SOLUTIONS, LLC, TYE GRISEL & JOE GRISEL

### (Conversion)

62. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

63. The actions of Defendants constitute conversion of the money or property of Plaintiff.

64. The Plaintiff had an interest, including a property right, in the above sums.

65. Defendants converted Plaintiff's money to their own use, profiting directly from their actions (including fees "earned" on fraud transactions held by Square), which were converted to their own respective uses.

66. Because of the unlawful conversion of property by Defendant, injuries have been inflicted upon Plaintiff that may be recovered by way of judgment against Defendants for a sum over the value of all sums converted, plus interest, other consequential damages, punitive damages, costs and attorney's fees.

### FOR A THIRD CAUSE OF ACTION
### AS TO DEFENDANTS SQUARE. AMEX & JOHN DOE BANK

**(Action for Money Had & Received)**

67. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

68. Defendants presently hold money, including all sums remaining on deposit and/or "earned" in fees, that is rightfully Plaintiff's.

    a.  Defendant Square holds money for the benefit of the Defendant, Grisel, or fictitious entities;

    b.  Defendant Square holds "fees" that it earned on fraudulent transactions;

    c.  Defendant AMEX holds "fees" or "interest" it assessed against Plaintiff and received by way of payment of statements by Plaintiff;

    d.  Defendant John Doe Bank may, upon information and belief, hold sums on deposit obtained by fraud.

69. Defendants ought, in equity and good conscience, to pay said money over to the Plaintiff.

70. Plaintiffs respectfully request that this Court issue an order directing same, plus such other relief as is just and proper.

## FOR A FOURTH CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE & JOHN DOE BANK

### (Unjust Enrichment)

71. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

72. Defendants have been enriched at Plaintiff's expense.

73. Defendants are without justification for retaining or earning any sum from the fraudulent activities described above.

74. To the extent Plaintiff lacks otherwise an adequate remedy at law, Plaintiff respectfully request that this Court issue an order directing return of said sums, plus such other relief as is just and proper.

## FOR A FIFTH CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, G5 SOLUTIONS, LLC, JOHN DOE BANK, & AMEX

### (Negligence)

75. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

76. Defendants owed Plaintiffs a duty to exercise due care which arises by statute, regulation, and the common law, including:

    a. Statutory Law (e.g., Dodd-Frank, Gramm Leach Bliley Act, EFTA, certain orders of the Federal Trade Commission, et. al.)

    b. The parties' prior or existing business relationship;

    c. Their use of public means of commerce, including the internet;

    d. Undertaking, duties, including endeavoring to process payments, and known risks to the public by doing so negligently or incompletely;

e.   Their own statements and/or policies.

77. Defendants breached their duties to Plaintiff in the above, and in such other as shown at trial.

78. The breach of duty by Defendants was in conscious, reckless disregard of the rights of Plaintiff.

79. As a direct and proximate result of the negligent, careless, reckless, willful and wanton acts and omissions of the Defendants, judgment should be granted to the Plaintiff for both actual and punitive damages.

## FOR A SIXTH CAUSE OF ACTION AS TO DEFENDANTS TYE GRISEL, JOE GRISEL, SQUARE, G5 MARKETING SOLUTIONS & JOHN DOE BANK

### (Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO")

### 18 U.S.C. §1961 et. seq)

80. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

81. Defendants are persons for purposes of the Act.

82. Defendants entered, employed and/or associated with and controlled an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c).

83. Defendants participated in the conduct of affairs of this enterprise, through a pattern of racketeering activity, which activity including mail fraud, wire fraud, and theft of funds, and including specifically (with respect to Defendant Square) in:

a.   Providing the tools to Grisel to conduct the enterprise

b.   Providing the means to Grisel to conduct the enterprise

c.   Accepting from Grisel the profits, via fees, of the enterprise

      d.   Retaining said profits, following the discovery and reporting of the scheme, as well as subsequent criminal prosecution;

84. Defendants' pattern of racketeering activity included at least two predicate acts in a ten-year period. 18 U.S.C. § 1961; including, but not limited to,

      a.   Theft;

      b.   Embezzlement

      c.   Fraud

      d.   Wire Fraud

      e.   Mail Fraud

      f.   Financial Institution Fraud

      g.   To the extent certain Defendants did not participate directly in such acts (which is denied), they knowingly and willfully aided and abetted them.

85. Defendants made interstate wire, signals and sound communications, including wireless telephone communications, in furtherance of the scheme in violation of 18 U.S.C 1343.

86. The predicate acts include, but are not limited to, the transfer (and retention by Defendants John Doe, Grisel(s) and Square) of funds belonging to Plaintiff in a series of more than 30 fraudulent transactions occurring between May of 2015-May of 2017.

87. Each of the above violations by the Defendants is a separate predicate act under RICO and was part of a common and continuous pattern of fraudulent acts and schemes with the same unlawful purpose, constituting a "pattern of racketeering activity" within the meaning of RICO.

88. Defendants' actions as alleged violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1961 et. seq

89. Defendants' acts have directly and proximately caused Plaintiff to suffer harm, including loss of money and property, for which Plaintiff is entitled to judgment.

## FOR A SEVENTH CAUSE OF ACTION AS TO DEFENDANTS SQUARE, G5 MARKETING SOLUTIONS, LLC, AMEX & JOHN DOE BANK

### (Violation of SC Code §39-5-10)

90. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

91. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

92. The activities of the Defendants constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

93. The actions of the Defendants, above-described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.

94. The actions of the Defendants have a real and substantial potential for repetition and affect the public interest, as shown by the following facts and such others as may be shown at trial:

    a. The assessment and processing of fraudulent charges by Defendants on more than 60 occasions;

    b. Numerous instances by AMEX of allowing, failing to detect, or failing to investigate claims of fraud, both through Square and otherwise, not only to Plaintiff but to consumers and businesses nationwide, to its financial benefit.

    c. Numerous instances where Square has a pattern and practice of allowing, participating in, and profiting by a willful failure to vet prospective users in any way, or detect or investigate fraudulent conduct, taking the position that Square "is just a payment processor.:

95. The Plaintiff has suffered an ascertainable loss due to the unlawful actions of the Defendants, entitling Plaintiff to recover actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs

### PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiff is for judgment in an amount sufficient to compensate Plaintiff for actual damages, with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

DAVE MAXFIELD, ATTORNEY, LLC

By:     s/ Dave Maxfield
David A. Maxfield, Esq., Fed ID 6293
P.O. Box 11865
Columbia, SC 29211
803-509-6800
855-299-1656 (fax)
dave@consumerlawsc.com

May 29, 2018