UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Big Red Box, LLC,<br><br>Plaintiff<br><br>vs.<br><br>Square, Inc., William Tye Grisel, Joe Grisel, G5 Marketing Solutions, LLC, and Branch Banking & Trust Co.,<br><br>Defendants | Civil Action No.   3:18-cv-00758-JMC-SVH<br><br>**SECOND AMENDED COMPLAINT**<br><br>(Jury Trial Requested) |

Plaintiff, complaining of the Defendants above-named, would show this Court:

## JURISDICTION

1. The State of Residence of Plaintiff is the State of South Carolina.

2. The Defendant Square, Inc. is a foreign corporation with its principal place of business, "nerve center" and headquarters in the State of California.

3. The Defendant William Tye Grisel is an individual who resides in Columbia, South Carolina.

4. The Defendant Joe Grisel is an individual who resides in Grapevine, Texas.

5. The Defendant G5 Marketing Solutions, LLC is a limited liability company with its headquarters, membership and nerve center in Colleyville, Texas, which has since been administratively dissolved.  G5's sole member was Tye Grisel.

6. The Defendant Branch Banking & Trust Co., ("BB&T") BB&T is a foreign corporation with its principal place of business, "nerve center" and headquarters in the state of North Carolina.

1

7. As described below, Plaintiff suffered significant financial losses, and other concrete injuries due to the conduct of Defendants herein.

8. This Court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. §§ 1331 and 1337.

## FACTUAL ALLEGATIONS

9. Plaintiff owns and operates a business that rents dumpsters locally, brokers the rental of dumpsters nationwide, and employs dozens of people in Columbia, South Carolina.

10. In or around 2012, Plaintiff hired Defendant William Tye Grisel ("Tye Grisel") to work in its Marketing and IT Department(s).

11. Unbeknownst to Plaintiff, in or around 2014 Defendant Tye Grisel created a fictitious business he called "Local List Construction."

12. Thereafter, Defendant Tye Grisel embarked upon a scheme, with the knowing, negligent and/or reckless complicity of the Defendants described below, to defraud Plaintiff of at least $1,049,996.97 on dummy "invoices" issued by the fictitious Local List company, the majority of which was accomplished via charging Plaintiff's American Express ("AMEX") cards through Square, and depositing the stolen funds into accounts at BB&T..

### Participation of Square, Joe Grisel, and BB&T in Scheme:
### The Role of Square

13. Defendant Square advertises its ability to turn any computer into a "Payment Terminal," promising that a user can "type in any card number into [a] computer and have the fund deposited into [an] account the next day."

14. Defendant Square provides users with equipment, including card readers and software, for this purpose and, upon information and belief, provided same to Defendant Tye Grisel, G5, and/or Tye Grisel's fictitious business.

2

15. Square earns money by taking a cut of each transaction (2.75% per swipe or 3.75% plus 15 cents for manually typed transactions).

16. Defendant Square knows that its products can be and are used "*for illegal or improper uses, including fraudulent or illegal sales of goods or services, money laundering, and terrorist financing.*"

17. Defendant Square knows or should know of the need to establish and follow robust underwriting and screening processes, and establish procedures for ongoing monitoring of, and responding to, red flags on merchant accounts, yet does not.

18. Despite the foregoing risks, the application for a Square Account – even for an entity holding itself out as a corporation or business is ridiculously brief, essentially requiring only an email a password, and acceptance of Square's terms.

19. Upon information and belief, beyond requiring acceptance of the term of use that a Square user will not use the service to commit fraud, Square takes no actions to monitor or ensure that same is not occurring.

20. Unlike a bank, Defendant Square does not even require a purported "business" – like Grisel's - to provide EIN numbers, articles of incorporation, or other "Know Your Customer" indicia long required of banks, to combat money laundering, fraud, and terrorism.  Likewise, Square does not:

    a. Obtain any description of the prospective new user's business, or the nature of goods or services sold;

    b. Obtain a list of persons involved in the business, or fictitious or trade names;

    c. Obtain a physical address at which the user has conducted business for any length of time;

3

    d. Obtain a list of banks and/or payment processor used by the new user previously, or chargeback rates associated with the business;

    e. Request even one trade or bank reference;

    f. Determine whether the prospective user has been placed previously in a payment card association's chargeback monitoring program;

    g. Inquire whether the prospective user is the subject of any legal or criminal actions;

    h. Monitor the activity of a user, once accepted for "red flags" for fraud;

    i. Make or assist in investigations when complaints of fraud are made.

21. Because of these and other security flaws, Square makes it easy for individuals to process and receive immediate gain from fraudulent transactions, unauthorized credit card transactions, and stolen credit card numbers.

22. Square itself profits from such transactions by its complicity and/or laxity through its transaction fees and, as discussed below, made (and retains to this day) transaction fees of between $28,874 and $41,000 from fraudulent transactions made by Grisel.

23. As a direct and proximate result, Square is routinely complicit in the execution of various fraudulent transactions.

24. In or around June of 2014, without Plaintiff's knowledge or consent, Defendant Tye Grisel opened an account with Defendant Square, Inc., ("Square") on behalf of his fictitious "Local List Construction" business.

25. The "business address(es)" for Local List Construction provided to Defendant Square (and, upon information and belief, to BB&T) was not a business address but Texas residential addresses used by various businesses, including Tye Grisel's father, Joe Grisel.

## The Role of BB&T

26. To receive the fraudulent charges processed via the Square account, it was necessary to link it to a bank account. For this, Tye Grisel chose Defendant BB&T.

27. The following allegations have now or will have evidentiary support after a reasonable opportunity for further investigation or discovery:

    a. In or around 2016, Defendant BB&T allowed Tye Grisel's company, Defendant G5 to open an account ending in 9274 at a branch in Texas.

    b. G5 was created within days of the opening of the account, for the express purpose of committing fraud, and specifically to facilitate the receipt of stolen funds.

    c. The opening of the above account(s) violated BB&T's own stated rules, those jointly promulgated by the Office of the Comptroller of the Currency, the Federal Reserve System, the FDIC, and the Office of Thrift Supervision, and/or FINCEN. These rules are designed specifically to preventing fraud by ensuring that the bank "knows its customer," that a customer is indeed who it represents itself to be, and that proper authority and documentation exists for the account to be opened, in order to prevent money laundering and terrorism, among other things. These rules and standards required that BB&T obtain proper documentation and resolutions showing its authenticity and authority.

    d. Despite the requirements that it do so, Defendant BB&T failed to verify the standing of G5, or properly train or supervise the employees, who allowed multiple account(s) to be opened in violation of these requirements. The violations included but were not limited to:

        i. Failing to require a proper corporate resolution from G5;

      ii. Failing to require proper identity documents;

      iii. Accepting a Euless, Texas residential address as G5's "place of business" on account 9274 where G5's sole member was not a resident of Texas.

      iv. Accepting the above address despite the fact it was linked to multiple other suspicious companies and persons including those connected to Joe Grisel including "Cyndex Services, LLC, and Envisage Capital, LLC," companies which themselves are accused of participating in conspiracies to defraud. See, *Sullins et. al. vs. Joe Grisel, Cyndex, Envisage, et. al.*, Cause No. 348-282711-15, 348th District Court, Tarrant County, Texas.

      v. Failing to properly require or verify G5's EIN number;

      vi. Failing to determine who would benefit from sums deposited into G5's account;

      vii. Failing to develop an expectation of G5's expected transactional behavior, based upon its purported business or, to the extent such a baseline was established, ignoring the gross departures from it;

      viii. Such other omissions as may be shown at trial;

e. Defendant BB&T was also required to establish appropriate due diligence policies, procedures, and controls reasonably designed to detect and report instances of fraud or money laundering through accounts. Such requirements included monitoring account activity for suspicious activity.

f. Despite the above requirement, Defendant BB&T failed to monitor, detect or flag:

6

      i. Departures from expected transactional behavior, including massive and repeated inbound deposits from Square, including account account activity in 9274 that ran from a balance of $100.00 in March of 2016 to the receipt of nearly $600,000 in transfers from Square over the next eleven months, and which was empty and "charged off" by March of 2017.

      ii. numerous debits for items not related to G5's expected transactional behavior, or any legitimate business purpose (such as golf, spa, and other personal expenses).

      iii. repeated transfers of money from 9274 to other BB&T accounts linked to the main 9274 account, including transfers to other "companies" run by Tye Grisel which were essentially fictitious, yet maintained accounts at BB&T.

    g. Upon information and belief, even after the run-through of well over $600,000 through the account, and subsequent chargeoff, BB&T at no time notified law enforcement or any other party concerning the account activities, and turned a blind eye to the fact that the account was being used to commit fraud.

28. By acting as above, Defendant BB&T allowed the fraud to occur, and then continue unchecked and unchallenged, to the detriment of Plaintiff.

### The Role of Joe Grisel

29. Upon information and belief, Joe Grisel (and companies owned or controlled by him) participated with Tye Grisel in the creation of fraudulent invoices for Local List Construction, including by allowing his address to be used for that entirely fictitious entity.

30. Additionally, Defendant Joe Grisel received and used funds rightfully belonging to Plaintiff, in an amount to be shown at trial and otherwise benefited from the scheme.

### "Local List Construction"

31. In connection with the creation of the fictitious invoices, Defendant Tye Grisel told Plaintiff, falsely, that Local List was a third-party provider of SEO services and business leads.

32. Local List provided no services, had no employees, and was entirely fictional.

33. Beginning in June of 2014, Defendant Tye Grisel used Plaintiff's Bank of America credit card number or numbers to process payments through Defendant Square and into BB&T or other institutions.

34. Defendant Square processed each fraudulent payment and transferred funds to the account at Defendant BB&T controlled by one or both Grisels.

35. Over the next year, Defendant Tye Grisel used Square and BB&T accounts to process at least $138,751.50 in fraudulent payments from Bank of America credit cards, all of which were converted to his own personal use.

### Continuation of Scheme with AMEX Cards

36. In March of 2015, Defendant Tye Grisel left Plaintiff, ostensibly to start a company known as "G5 Marketing Solutions, LLC."

37. Defendant G5 Marketing Solutions, LLC was, upon information and belief, formed as a limited liability in February of 2016.

38. Tye Grisel continued, individually and through G5, in an "independent consulting" relationship with Plaintiff to provide marketing advice through a company called G5; Grisel continued the use of the fictitious Local List scheme, creating dummy invoices for Local List and processing funds – through Square – into the BB&T Account.

39. Prior to 2015, AMEX issued two credit cards to Plaintiff: a Business Platinum card, and an AMEX Gold card.

40. After moving to G5, Tye Grisel obtained the account numbers for the above AMEX cards.

41. From June of 2015 through June of 2016, Tye Grisel used the Business Platinum card to process payments through Square to the BB&T account; from July of 2016 through April of 2017 (at which time the scheme was uncovered) Tye Grisel used the AMEX Gold card.

42. During the above time periods, Defendant Tye Grisel used Defendant Square to process over $898,000 using the AMEX cards.

43. In early April of 2017, Defendant Tye Grisel's fraudulent scheme was uncovered, and criminal charges were initiated against him.

44. Upon discovering the fraud, Plaintiff immediately reported same to AMEX in writing.

45. Initially, AMEX credited Plaintiff's accounts for over $550,000 which, clearly, represented fraudulent funds.  n or about April 11, 2017, AMEX credited Plaintiff's $97,457 However, on or about May 8, 2017 reversed all prior credits and purported to close its investigation because Plaintiff "released the account number to the "Merchant."

**Damage to Plaintiff as a Result of Defendants' Wrongful Acts**

46. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered out of pocket losses in the total amount of $1,049,996.97.  Defendants are jointly and severally liable for the losses and such other damages, costs, attorney's fees, interest thereon, and other relief as awarded at trial, as follows:

    a. As a direct and proximate result of the actions or inaction of Defendants Tye Grisel, Joe Grisel, BB&T, G5 Marketing Solutions and Square, Plaintiff suffered fraud losses exceeding $1,049,996.97, of which

9

losses exceeding $898,000 were accomplished through the processing of the AMEX card.

47. Defendant Square earned, by its participating in this scheme, transaction fees between $28,874 and $41,000 from fraudulent transactions made by Grisel for which it is liable along with such other sums stolen.

48. As a direct and proximate result of Defendants' negligent, reckless, willful, intentional, and unlawful conduct, its violations of the Plaintiff's rights under state and federal law Plaintiff has been damaged in an amount to be determined by the trier of fact.

49. The harms caused by Defendants is likely to be redressed by a favorable judicial decision, and through both injunctive relief, an award of damages, and assessment of fines and punitive damages.

## FIRST CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, BB&T,
## G5 MARKETING SOLUTIONS, LLC, & JOE GRISEL

### (Aiding and Abetting)

50. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

51. Plaintiff would show that Defendant Tye Grisel owed Plaintiff a fiduciary duty and was consequently bound to act with good faith and due regard to the interest of the Plaintiff.

52. Defendant Square – who was provided applicant information by Tye Grisel, had access to and processed transactions made at a time when it knew or should have known that Grisel was employed by Defendant, and communicated with him electronically or otherwise (including to e-mail addresses at Plaintiff's domain) knew or should have known of his fiduciary duty.

53. As set forth hereinabove, while employed by Plaintiff, Defendant Tye Grisel breached his duties to the Plaintiff by way of the fraudulent schemes described hereinabove.

54. Defendant Square not only knew of the breach but participated in each fraudulent transaction herein – and expressly profited from such transactions – in an amount between $28,874 and $41,000.

55. Defendant Tye Grisel's scheme involved direct or obvious fraudulent charges, for his direct and obvious benefit, in clear breach of his fiduciary duties to the Plaintiff.

56. Defendants Square, BB&T, G5, and Joe Grisel knowingly or recklessly participated in these transactions, and directly aided and enabled Tye Grisel to breach his fiduciary duty to the Plaintiff.

57. Defendant Square knowingly participated in allowing the opening of the account and processing of stolen funds and retaining a portion thereof as fees.

58. As a direct and proximate result of Defendants' assistance, by reckless or intentional means to be shown at trial, Plaintiff has been damaged in an amount to be determined by the trier of fact.

## FOR A SECOND CAUSE OF ACTION
## AS TO DEFENDANTS SQUARE, BB&T, G5 SOLUTIONS, LLC, TYE GRISEL & JOE GRISEL

**(Conversion)**

59. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

60. The actions of Defendants constitute conversion of the money or property of Plaintiff.

61. The Plaintiff had an interest, including a property right, in the above sums.

62. Defendants converted Plaintiff's money to their own use, profiting directly from their actions (including fees "earned" on fraud transactions held by Square), which were converted to their own respective uses.

63. Because of the unlawful conversion of property by Defendants, injuries have been inflicted upon Plaintiff that may be recovered by way of judgment against Defendants for a sum over the value of all sums converted, plus interest, other consequential damages, punitive damages, costs and attorney's fees.

**FOR A THIRD CAUSE OF ACTION**
**AS TO DEFENDANTS SQUARE & BB&T**

**(Action for Money Had & Received)**

64. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

65. Defendants presently hold money, including all sums remaining on deposit and/or "earned" in fees, that is rightfully Plaintiff's.

    a. Defendant Square holds money for the benefit of the Defendant, Grisel, or fictitious entities;

    b. Defendant Square holds "fees" that it earned on fraudulent transactions;

    c. Defendant BB&T may, upon information and belief, hold sums on deposit obtained by fraud.

66. Defendants ought, in equity and good conscience, to pay said money over to the Plaintiff.

67. Plaintiffs respectfully request that this Court issue an order directing same, plus such other relief as is just and proper.

### FOR A FOURTH CAUSE OF ACTION
### AS TO DEFENDANTS SQUARE & BB&T

### (Unjust Enrichment)

68. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

69. Defendants have been enriched at Plaintiff's expense.

70. Defendants are without justification for retaining or earning any sum from the fraudulent activities described above.

71. To the extent Plaintiff lacks otherwise an adequate remedy at law, Plaintiff respectfully request that this Court issue an order directing return of said sums, plus such other relief as is just and proper.

### FOR A FIFTH CAUSE OF ACTION
### AS TO DEFENDANTS SQUARE& BB&T

### (Negligence)

72. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

73. Defendants Square and BB&T owed Plaintiffs a duty to exercise due care which arises by statute, regulation, and the common law, including:

    a. Statutory Law (e.g., Dodd-Frank, Gramm Leach Bliley Act, EFTA, certain orders of the Federal Trade Commission, et. al.)

    b. The parties' prior or existing business relationship;

    c. Their use of public means of commerce, including the internet;

    d. Undertaking, duties, including endeavoring to process payments, and known risks to the public by doing so negligently or incompletely;

    e. Their own statements and/or policies.

74. Defendants breached their duties to Plaintiff in the above, and in such other as shown at trial.

75. The breach of duty by Defendants was in conscious, reckless disregard of the rights of Plaintiff.

76. As a direct and proximate result of the negligent, careless, reckless, willful and wanton acts and omissions of the Defendants, judgment should be granted to the Plaintiff for both actual and punitive damages.

**FOR A SIXTH CAUSE OF ACTION AS TO DEFENDANTS SQUARE, G5 MARKETING SOLUTIONS, LLC, & BB&T**

**(Violation of SC Code §39-5-10)**

77. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

78. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

79. The activities of the Defendants constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

80. The actions of the Defendants, above-described, constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.

81. The actions of the Defendants have a real and substantial potential for repetition and affect the public interest, as shown by the following facts and such others as may be shown at trial:

    a. The assessment and processing of fraudulent charges by Defendants on more than 60 occasions;

    b. Numerous instances where Square has a pattern and practice of allowing, participating in, and profiting by a willful failure to vet

14

      prospective users in any way, or detect or investigate fraudulent conduct, taking the position that Square "is just a payment processor.:

   c. Numerous instances where BB&T has a pattern and practice of allowing alleged "corporate" accounts to be opened without following standards and regulations (including those referenced above) intended to prevent money laundering, terrorist financing, or fraud.

   d. Numerous instances of deceptive and fraudulent acts committed against Plaintiff by Defendant G5.

82. The Plaintiff has suffered an ascertainable loss due to the unlawful actions of the Defendants, entitling Plaintiff to recover actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs

### PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiff is for judgment in an amount sufficient to compensate Plaintiff for actual damages, with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

DAVE MAXFIELD, ATTORNEY, LLC

By:    s/ Dave Maxfield_____
        David A. Maxfield, Esq., Fed ID 6293
        P.O. Box 11865
        Columbia, SC 29211
        803-509-6800
        855-299-1656 (fax)
        dave@consumerlawsc.com

March 19, 2019